

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom DeBerry, Member
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. 0-1857
Re: Powers of Board of
Control respecting
discharge of em-
ployees of San
Antonio State Hospital.

In your letter of January 20, 1940, you re-
quest our opinion in response to the following questions:

"1.  Does the Board of Control,
having 'the general control, management
and direction of the affairs, property
and business of all eleemosynary insti-
tutions vested in it' (Art. 3174), and
having the power to 'appoint all offic-
ers, and employes of such institutions,
and fix their salaries and wages' (Sec.
3 and 4, Article 693), have the power
to discharge or remove of its own author-
ity, employes of such eleemosynary insti-
tutions?

"2.  Can the Board of Control remove
or discharge employes of an eleemosynary
institution without the recommendation of
the Superintendent as set out in Article
693, Section 5, or without the Superinten-
dent 'removing for good cause, etc.' under
Article 3176, Section 2.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"3. If the Board of Control has the authority to discharge or remove employes of an eleemosynary institution without action of the Superintendent, can it delegate such authority to the Chief of the Eleemosynary Division of the Board of Control, by appropriate minute?

"4. By virtue of Art. 3176, and other pertinent articles of the Revised Civil Statutes, the Superintendent is the administrative head of an eleemosynary institution with certain broad powers. Can the Board of Control delegate to the Chief of the Eleemosynary Division of the Board of Control authority to go to an eleemosynary institution and perform certain duties given to the Superintendent by Statute, when the Superintendent of such institution is in active charge and has not been legally removed?"

By letter of January 24, 1940, you advise that the institution with which you are concerned is the San Antonio State Hospital, and our opinion will be so confined.

Article 601, Revised Civil Statutes, reads:

"The State Board of Control shall consist of three citizens of this State, one to be biennially appointed for a term of six years by the Governor with the advice of the Senate, the classification to remain as now constituted by law. Any member of the Board may at any time be dismissed by the Governor for good cause, the reasons for such dismissal to be specified and filed with the Secretary of State. The members of the Board shall be public officers and shall take the official oath, and each shall give bond in form prescribed by the Attorney General in the sum of Fifty Thousand Dollars payable to and to be approved by the Governor, conditioned for the faithful performance of his duties."

Article 693, Revised Civil Statutes, provides in part:

"The Board of Control shall have power:

"1. To make rules and regulations for the government of the State eleemosynary institutions, not inconsistent with the constitution and laws.

"2. To appoint all officers and employes of such institutions and fix their salaries and wages.

"3. To discharge, upon the recommendation of the superintendent, any officer, employe or inmate.

"4. To appoint assistant physicians, stewards, matrons and apothecaries.

"5. To make all contracts and necessary arrangements for the erection of buildings or improvements upon the grounds of the institutions.

"6. To examine and approve or reject any vouchers or accounts of the superintendents.

"7. It shall exercise a careful supervision over the general operations of such institutions and control the expenditures, and direct the manner in which their revenue shall be disbursed.

"8. It may take and hold in trust any gift or devise of real or personal estate for the benefit of such institution and apply the same as the donor or devisor may direct."

Article 691, Revised Civil Statutes, reads as follows:

"The Board shall elect a superintendent for each institution under its control. Each

superintendent shall have had special ad-
vantages and practical experience in the
management of the class of persons com-
mitted to his charge. The term of office
shall be two years, subject to removal by
the Board for good cause."

The foregoing articles 601, 693 and 691, are
all found in Title 20, while the succeeding articles
are in Title 51 of the Revised Civil Statutes.

Article 3174 provides:

"Each eleemosynary institution estab-
lished by law shall be managed and controlled
in accordance with the provisions of this
title. The general control, management and
direction of the affairs, property and busi-
ness of such institutions is vested in the
State Board of Control."

Article 3184 reads as follows:

"The superintendent of each State hos-
pital shall be a married man, a skilled
physician, and experienced in the treat-
ment of insanity. He shall reside at the
asylum with his family, and shall devote
his time exclusively to the duties of his
office, and may be removed by the State
Board of Control for good cause."

Article 3176 provides as follows:

"The Superintendent shall be the admin-
istrative head of the institution to which
he is appointed. He shall have the follow-
ing powers:

"1. To establish such rules and regula-
tions for the government of the institution
in his charge, as he deems will best promote
the interest and welfare of its inmates.

"2. Where not otherwise provided by
law, to appoint the subordinate officers,

teachers, attendants, and other employes,
and to fix their salaries.

"3. To remove for good cause, with
the consent of the Board, any officer,
teacher or employe.

"4. The care and custody of the build-
ings, grounds, furniture, and other proper-
ty pertaining to the institution.

The power of appointment generally carries
with it the power to remove. Noeper vs. Stewart, 66
S. W. (2d) 812. However, such power of removal may
be restricted by statute. Royston vs. Griffin, 42 Tex.
566; 34 Tex. Jur. 394; 46 C. J. 985; Hanchett vs. Bur-
bidge, 202 Pac. 377 (Utah); Ardmore vs. Sayre, 154 Pac.
356 (Okla.). The most frequent illustration of such a
curtailment exists in those cases where the office or
employment to which the appointment is made is for a
fixed period of time. In such cases, the power to ap-
point does not carry with it the power to remove.
Collins vs. Tracy, 36 Tex. 546; Upshaw vs. Booth,
37 Tex. 125; 46 C. J. 985.

Our Legislature has made specific provisions
concerning the authority to remove such employees.
There is nothing in the organic law of this State to
forbid such action on the part of the legislative body.

Having reference to the powers of the Board
of Control over the affairs of the eleemosynary insti-
tutions, Article 693 gives the Board of Control the
power "to discharge, upon the recommendation of the
superintendent, any officer, employe or inmate."
Article 3176 provides that the superintendent shall
have the power "to remove for good cause, with the
consent of the Board, any officer, teacher or employee."

Article 3184 requires that the superintendent
be a skilled physician, experienced in the treatment of
insanity, and that he reside at the asylum. The Legis-
lature wisely saw the ultimate deleterious effect which
would follow to the organization of such an institution,
if the superintendent should be denied any control over
the employees. And, if he should have no voice in either
the appointment or discharge of such employees, he would

be without effective control over them. That a competent superintendent, residing at the institution and in constant superivision of its operation, who is required to be a skilled physician and to be experienced in the treatment of insanity, would be in a position to know the conduct, merits and value of the employees of the institution better than a board residing at Austin and burdened with many and varied other duties, cannot well admit of argument. The Legislature has provided for the concurrent action by both the superintendent and the Board of Control in order to accomplish the dismissal of employees of the institution mentioned by you. This answers your first and second questions in such a way that no reply is needed to the third. Your fourth inquiry is rather general, and we must ask that you kindly redraft the same so as to be more specific, if you need further information touching on the subject.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Glenn R. Lewis
Assistant

GRL:LW